1

2

3

4

5

6

7

8

9

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

JOUREY NEWELL and FELIPE
MACHADO, individually and on behalf of
all others similarly situated,

            Plaintiffs,

        v.

RECREATIONAL EQUIPMENT, INC., a
Washington company,

            Defendant.

Case No. 2:19-cv-00662

**DEFENDANT RECREATIONAL
EQUIPMENT, INC.'S MOTION TO
DISMISS**

NOTE ON MOTION CALENDAR:  June 21,
2019

18

## I.    INTRODUCTION AND RELIEF REQUESTED

19

20

21

22

23

24

25

26

This Complaint depends on a deliberate distortion of the patronage dividends issued by

Defendant Recreational Equipment, Inc. ("REI").  Plaintiffs Jourey Newell and Felipe Machado

claim that REI's patronage dividends are subject to two inapplicable statutes governing the

expiration of gift cards under state and federal law:  (1) the Electronic Funds Transfer Act

("EFTA"), as amended by the Credit Card Accountability and Disclosure Act ("CARD"), 15

U.S.C. § 1693*l*-1; and (2) Washington's gift certificate statute, RCW 19.240.020.  Compl. ¶¶

42, 47.  Taken together, the Plaintiffs argue these inapplicable statutory requirements mean that

REI's patronage dividends can never legally expire.

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 1
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

But, despite the Plaintiffs' arguments to the contrary, REI's patronage dividends are actually governed by RCW 23.86.160, which specifically **requires** unclaimed patronage dividends to "revert to the association" on a date selected by the board of directors, which date can be "any time after one year from the end of the fiscal year during which such distributions or redemptions have been declared." Statutes requiring longer expiration periods for *gift cards* are entirely irrelevant to the patronage dividends at issue here, which the Washington Legislature has decided "shall revert" to REI on the specific—and shorter—timetable provided in RCW 23.86.160.

## II.      STATEMENT OF FACTS

REI is the nation's largest consumer cooperative. Founded in 1938, REI is a Washington consumer cooperative corporation organized under RCW 24.06. In exchange for a small fee, individuals can purchase a membership in REI, which generally lasts a lifetime if the member regularly patronizes the cooperative. REI does not issue any capital stock or have shareholders, but democratic control of the cooperative is placed in the hands of its members. In this way, members may be considered to be "member-owners" of the cooperative. *See* Compl. ¶ 25, 30.

RCW 24.06.032(1) authorizes consumer cooperative corporations like REI to distribute net earnings back to their members in the form of patronage dividends governed by RCW 23.86.160. Compl. ¶ 15.[1] REI has exercised this authority, as reflected in its corporate bylaws, which state:

> Pursuant to Section 24.06.032 of Revised Code of Washington ("RCW"), Chapter 24.06 (the "Governing Statute"), REI elects to avail itself of the additional rights and powers granted to cooperative associations under RCW 23.86.030(1), 23.86.105(1), 23.86.160 and 23.86.170.

---

[1] RCW 24.06.032(1) provides: "In addition to any other rights and powers granted under this chapter, any mutual or miscellaneous corporation that was organized under this chapter prior to June 10, 2004, and conducts its business on a cooperative basis is entitled, by means of an express election contained in its articles of incorporation or bylaws, to avail itself of part or all of the additional rights and powers granted to cooperative associations under RCW 23.86.105(1), 23.86.160, and 23.86.170, and, if the corporation is a consumer cooperative, under RCW 23.95.305(6) and 23.86.030(2)."

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 2
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  REI Bylaws, Art. I, Declaration of Anthony Todaro ("Todaro Decl."), Ex. 1.[2]

2       Although RCW 23.86.160 allows REI to distribute annual patronage dividends to its

3  members, the statute also **requires** all unclaimed patronage dividends to revert to the company

4  on a date, selected by the board of directors, at least one year after the end of the fiscal year when

5  the dividend is declared.  As stated in pertinent part:

6          **All unclaimed dividends** or distributions authorized under this
        chapter or funds payable on redeemed stock, equity certificates,
7          book credits, or capital funds **shall revert** to the association at the
        discretion of the directors **at any time after one year from the**
8          **end of the fiscal year during which such distributions or**
        **redemptions have been declared**.

9  RCW 23.86.160.[3]  REI's bylaws confirm that it has selected a reversion date more than one year

10  after the end of the fiscal year during which dividends are issued, as required by Washington law:

11
12          Unless it has taken specific action to the contrary, the REI Board
        will be conclusively presumed to have exercised its discretion
13          under RCW 23.86.160 to cause the expiration and reversion to REI
        of any patronage dividend that was paid in the form of a qualified
14          or non-qualified written notice of allocation or in merchandise
        credits, to the extent it has not been used or redeemed on or before
15          the second January 3 following declaration of the patronage
        dividend.

16  REI Bylaws, Art. V § 4, Todaro Decl. Ex. 1; *see also* Compl. ¶ 15.

17       Washington law mandates not just the timing, but also the method of calculating member

18  dividends.  As provided by the Legislature:

19          The directors may apportion the net earnings by paying dividends
20          upon the paid-up capital stock at a rate not exceeding eight percent

---

21  [2] For purposes of this motion to dismiss, the Court should consider REI's bylaws under Federal
Rule of Evidence 201(b)(2), which allows the court to take judicial notice of any fact "not subject
22  to reasonable dispute because it . . . can be accurately and readily determined from sources whose
accuracy cannot reasonably be question."  *See also Foss on Behalf of Quality Sys. Inc. v.*
23  *Barbarosh*, No. SACV 14-00110-CJC JPRX, 2018 WL 5276292, at *4 n.8 (C.D. Cal. July 25,
2018) (explaining that courts routinely take judicial notice of bylaws when considering a motion
24  to dismiss).

25  [3] The Complaint does not—and cannot—allege that REI has failed to comply with the timing
required in RCW 23.86.160.  *See* Compl. ¶ 23 ("[E]very year, on a single day in January every
26  member gift card issued 2 years prior expires.  (For example, in January 2019 every gift card REI
issued in March 2017 expired.).")

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 3
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

per annum.  They may set aside reasonable reserves out of such net earnings for any association purpose.  The directors may, however, distribute all or any portion of the net earnings to members **in proportion to the business of each with the association** and they may include nonmembers at a rate not exceeding that paid to members.  The directors may distribute, **on a patronage basis**, such net earnings at different rates on different classes, kinds, or varieties of products handled.  All dividends declared or other distributions made under this section may, in the discretion of the directors, be in the form of capital stock, capital or equity certificates, book credits, or capital funds of the association.

RCW 23.86.160.  Although "[e]ach member receives a dividend that is a certain percentage of the amount the member spent at REI in the prior year," Compl. ¶ 15, this is not because members are 'purchasing' dividends or any form of merchandise credits.  Rather, when REI distributes patronage dividends, it is complying with the requirements of RCW 23.86.160 by distributing the portion of its net earnings determined by its board of directors to members on a patronage basis.  In fact, although REI's patronage dividends are typically distributed each year, neither the amount of the dividend nor the dividend itself is guaranteed in any year—regardless of the amount a member may have spent at REI.[4]  The board of directors may choose not to distribute a patronage dividend for any year if it determines that it would not be in the best interests of the cooperative.[5]

According to the Complaint, Plaintiff Newell and Plaintiff Machado are REI members.  Compl. ¶ 25, 30.[6]  The Plaintiffs allege that REI issued a dividend to Plaintiff Newell in 2016,

---

[4] REI's bylaws state:  "The net distributable surplus from REI's conduct of business on a cooperative basis will be returned annually to active members as patronage dividends, in proportion to their purchases from REI during the calendar year for which the dividend is declared, subject to the other provisions of this Article V."  REI Bylaws, Art. V § 1, Todaro Decl. Ex. 1.  "The REI Board will annually determine the amount of net distributable surplus for the prior calendar year, the time and manner of distribution of patronage dividends from such amount, and any other related matters, in accordance with such policies and procedures as it may adopt from time to time."  *Id*.

[5] "The REI Board may elect not to declare or distribute a patronage dividend of net distributable surplus for any calendar year if it determines that such election is in the best interests of REI; however, in accordance with Article VI of the REI Articles, the REI Board may not so elect more frequently than every other calendar year."  *Id*.

[6] Plaintiff Newell is a serial plaintiff who has filed at least six putative class actions in recent years.  *Newell v. Johnson*, No. 2:19-cv-00459-JS (E.D. Penn. Jan. 31, 2019) (*pro se*); *Newell v. Optimaadvocates, Inc*., No. 2:18-cv-04183-GAM (E.D. Penn. Sept. 27, 2018) (*pro se*); *Newell v.*

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 4
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  and that his dividend reverted to the company when Mr. Newell failed to claim it in 2018. *Id.*

2  ¶¶ 26–28. The Plaintiffs allege that REI issued a dividend to Plaintiff Machado in 2017, and that

3  his dividend reverted to the company when Mr. Machado failed to claim it in 2019. *Id.* ¶¶ 31–33.

4  ### III.    ARGUMENT

5  Member patronage dividends are not gift certificates or gift cards. They are a permissive

6  distribution of a portion of REI's net earnings to members in an amount determined by the board

7  of directors from year-to-year, and unclaimed dividends are subject to **mandatory** reversion

8  under RCW 23.86.160. To adopt the Plaintiffs' arguments would cause an irreconcilable conflict

9  between RCW 23.86.160, the specific statute governing distribution of earnings by cooperative

10  associations, and RCW 19.240.020, a far broader statute regulating gift cards purchased for cash.

11  Because the Plaintiffs have failed to state a claim for which relief can be granted, the

12  Court should dismiss their Complaint under Federal Rule of Civil Procedure 12(b)(6). The

13  Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief

14  that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.*

15  *v. Twombly*, 550 U.S. 544, 570 (2007). While a court must draw all reasonable inferences in

16  favor of the non-moving party, the Plaintiffs' "factual allegations must be enough to raise a right

17  to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the pleading is not sufficient

18  "if it tenders 'naked assertions' devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678

19  (quoting *Twombly*, 550 U.S. at 557). The Complaint fails to state a claim for which relief can be

20  granted, because even assuming every fact alleged in the Complaint is true, REI's patronage

21  dividends are not subject to the gift card requirements in 15 U.S.C. § 1693*l*-1(c) and

22  RCW 19.240.020.

23

24

25  *Ethos Data Management, Inc.*, No. 9:19-cv-80627-RKA (S.D. Fla. May 10, 2019); *Newell v. Aliera Healthcare, Inc.*, No. 1:19-cv-01489-SCJ (N.D. Ga. Apr. 2, 2019); *Newell v. Gohealth LLC*, No. 1:19-cv-01983, (N.D. Ill. Mar. 22, 2019); *Newell v. Amcol Systems, Inc.*, No. 2:16-cv-

26  04946-TJS (E.D. Penn. Sept. 14, 2016).

**A.**   **REI's patronage dividends are the distribution of net earnings governed by Washington's Nonprofit Miscellaneous and Mutual Corporations Act, RCW 24.06.**

The Complaint fundamentally distorts the nature and function of the patronage dividends that REI typically issues to its members each year.  Similar to any other corporate dividend, REI's patronage dividends are a distribution of a portion of the company's net earnings to its members—not a gift certificate or merchandise credit that can be purchased as a gift for another or oneself.  *See Dividend*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Dividend.  A portion of a company's earnings or profits distributed pro rata to its shareholders, usually in the form of cash or additional shares.").

State and federal statutes allow cooperative associations to "avoid taxation by distributing income to Members in the form of patronage dividends."  *See Affiliated Foods, Inc. v. Comm'r*, 154 F.3d 527, 530 (5th Cir. 1998) (citing 26 U.S.C. §§ 1382(b), 1388).[7]  Although every member has an equal vote in the governance of REI, Washington law permits cooperative associations to distribute all or any portion of their net earnings "on a patronage basis," which means that members earn dividends "in proportion to the business of each with the association."  RCW 23.86.160.  Because corporate distributions other than patronage dividends are subject to significant taxation for shareholders, the Washington Department of Revenue has issued a precise definition of patronage dividends:

> A patronage dividend is the distribution of a member's share of the profits of a cooperative association based on the quantity of purchases made by the member. The amount of a patronage dividend (rebate or refund) is determined by:
>
> • The expenses of doing business;
>
> • The volume of sales to other members; and
>
> • The proportion of business the specific member has conducted with the cooperative.

---

[7] Under normal circumstances, "[o]nce these patronage dividends are paid, Members must report the dividends as income."  *Id.*  Although immaterial to this Motion, REI's directors have elected for the company to pay taxes on earnings distributed through its patronage dividends, so that REI members are not taxed instead.

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 6
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

> A patronage dividend determined in this manner is simply a redistribution of the cooperative's "profit," even though the cooperative may refer to accounting mechanisms such as "tentative" or "delayed" invoices, or to "deferred discounts."

WAC 458-20-108(9).  Congress has also defined a patronage dividend for purposes of federal law, which states:

> the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—
>
> (1) on the basis of quantity or value of business done with or for such patron,
>
> (2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and
>
> (3) which is determined by reference to the net earnings of the organization from business done with or for its patrons.

26 U.S.C. § 1388(a).  Unlike a retail product or gift card, a member cannot "buy" a patronage dividend.  Although patronage dividends are typically issued in proportion to each member's patronage of the association during a year, whether to issue a dividend—and what amount—is at the discretion of REI's board of directors (regardless of the level of member patronage in any given year) and is directly governed by controlling law, rather than the 'sale' of dividends by REI.

## B.    Member dividends are not regulated by the EFTA.

The Court should dismiss the first claim in the Complaint because patronage dividends are not gift cards subject to regulation by the EFTA.  The EFTA prohibits the sale of any "gift certificate, store gift card, or general-use prepaid card" with an expiration date "not earlier than 5 years after the date on which the gift certificate was issued."  15 U.S.C. § 1693*l*-1(c).  Corporate dividends, including those issued on a patronage basis, do not fall within the gift cards regulated by this statute.

### 1.    A member dividend is not a "gift card" under the EFTA.

There is nothing in the EFTA to support the Complaint's allegation that REI's patronage dividends are a "gift card."  Compl. ¶ 43.  As defined in the EFTA:

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 7
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1

> The term "store gift card" means an electronic promise, plastic card, or other payment code or device that is--

2

> (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo;

3

4

> (ii) issued in a specified amount, whether or not that amount may be increased in value or reloaded at the request of the holder;

5

> (iii) purchased on a prepaid basis in exchange for payment; and

6

> (iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

7

15 U.S.C. § 1693*l*-1(a)(2)(C).[8]  Unlike gift cards, REI's patronage dividends are not "purchased

8

on a prepaid basis in exchange for payment." § 1693*l*-1(a)(2)(C)(iii).  Rather, as explained

9

above, if REI's board of directors chooses to issue a patronage dividend in any year, it distributes

10

a portion of its net earnings "by paying dividends . . . in proportion to the business of each with

11

the association." RCW 23.86.160.  Although RCW 23.86.160 permits REI to distribute a portion

12

of net earnings through dividends "on a patronage basis," that does not mean those patronage

13

dividends can be purchased on a prepaid basis in exchange for payment.  15 U.S.C. § 1693*l*-

14

1(a)(2)(C)(iii).  In fact, neither the amount of the dividend nor the dividend itself is guaranteed

15

in any year—regardless of the amount a member may have spent at REI.[9]  The REI board of

16

directors may choose not to distribute **any** patronage dividend if it determines that it would not

17

be in the best interests of the cooperative, such as a year that REI were to suffer a net loss.  A

18

---

19

[8] Through the rulemaking process, the Consumer Financial Protect Bureau codified additional guidance regarding these terms in Regulation E, 12 C.F.R. § 1005.20.

20

Through the notice-and-comment rulemaking progress, the Board of Governors of the Federal Reserve System codified additional guidance regarding these terms in the EFTA's implementing regulation, Regulation E, at 12 C.F.R. § 205.20.  75 Fed. Reg. 16,580 (Apr. 1, 2010).  Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act transferred rulemaking authority for the EFTA to the Consumer Financial Protection Bureau ("CFPB").  Under this authority, the CFPB republished Regulation E and recodified 12 C.F.R. § 205.20 as 12 C.F.R. § 1005.20; in so doing, the CFPB made only certain non-substantive, technical changes. 76 Fed. Reg. 81,020 (Dec. 27, 2011).

21

22

23

24

25

[9] REI's bylaws acknowledge that in certain circumstances, "[t]he REI Board may elect not to declare or distribute a patronage dividend of net distributable surplus for any calendar year if it determines that such election is in the best interests of REI . . ." REI Bylaws, Art. V § 1, Todaro Decl. Ex. 1.

26

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 8
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

member simply cannot enter an REI store and "purchase" a dividend "on a prepaid basis in exchange for payment," as required for a "gift card" within § 1693*l*-1(a)(2)(C)(iii).

> 2.   *Even if patronage dividends fell within the definition of a "gift card," they would be subject to multiple exclusions in the EFTA.*

Even if REI's patronage dividends did fall within the definition of a gift card, they would be subject to numerous exclusions within the EFTA.  As explained in this statute:

> The terms "general-use prepaid card", "gift certificate", and "store gift card" do not include an electronic promise, plastic card, or payment code or device that is--
>
> * * *
>
> (ii) reloadable and not marketed or labeled as a gift card or gift certificate;
>
> (iii) a loyalty, award, or promotional gift card, as defined by the [Consumer Financial Protection] Bureau; [or]
>
> (iv) not marketed to the general public;

15 U.S.C. § 1693*l*-1(a)(2)(D).  Assuming that patronage dividends were within the definition of a gift card, they would be subject to all three of these exclusions.

**First**, if patronage dividends were gift cards—and they are not—they would satisfy an exception for gift cards that are "reloadable and not marketed or labeled as a gift card or gift certificate."  15 U.S.C. § 1693*l*-1(a)(2)(D)(ii).  As acknowledged in the Complaint, REI "issues an annual dividend to its members," distributing those "members' share of the cooperative's annual profits."  Compl. ¶ 15.  When active members receive additional patronage dividend funds every year, they are issued under the same membership number, which the Plaintiffs attempt to construe as a "code" making the dividend into a gift card.[10]  Dividend Statement, Todaro Decl. Ex. 2 at 4.[11]  If a membership number were a payment code or device, it would be one "reloaded" each year.

---

[10] *See* 15 U.S.C. § 1693*l*-1(a)(2)(D) ("The term 'store gift card' means an electronic promise, plastic card, or other payment code or device that …").

[11] The Court may consider the dividend provided to REI members when considering this motion to dismiss, because it forms the basis of—and is explicitly referenced in—the Complaint.  *See, e.g.*, Compl. ¶¶ 15, 17, 22; *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 9
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

On their face, the REI dividend statements are also clearly labeled as a dividend, without ever using the terms "gift card or gift certificate." 15 U.S.C. § 1693*l*-1(a)(2)(D)(ii). Dividend Statement, Todaro Decl. Ex. 2. This format aligns with the Official Staff Interpretations of Regulation E, which explain that "[t]he term 'marketed or labeled as a gift card or gift certificate' means directly or indirectly offering, advertising or otherwise suggesting the potential use of a card, code or other device, as a gift for another person." Official Staff Interpretations, 12 C.F.R. Part 1005, Supp. I, § 1005.20, Comment 20(b)(2)-2 (available online at https://www.consumerfinance.gov/policy-compliance/rulemaking/regulations/1005/Interp-20/).[12] Moreover, a patronage dividend—unlike a product **purchased** with a dividend—cannot be given "as a gift for another person." REI's articles of incorporation specifically state that "Membership shall not be transferable and shall not pass by any form of succession." Amended Articles of Incorporation, Art. IV § 3 (Oct. 30, 1970), Todaro Decl. Ex. 3.[13]

In a similar case, *Hughes v. CorePower Yoga, LLC*, the district court granted a motion to dismiss another putative EFTA class for failure to state a claim under Rule 12(b)(6), finding that even if yoga class credits met the definition of a gift card, they would also fall within the exclusion for reloadable cards that cannot be given as a gift. No. 12-CV-00905 SRN/TNL, 2013 WL 1314456, at *5–6 (D. Minn. Mar. 28, 2013). Importantly, the court explained that the plaintiff had the burden to affirmatively "allege that Defendant marketed or labeled the Class Pack cards as gift cards or gift certificates," which the complaint did not do. *Id.* at *5–6. In the same manner, Plaintiffs Newell and Machado did not—and cannot—allege that REI marketed

---

complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

[12] "An agency's interpretation of its own ambiguous regulation is generally entitled to *Auer* deference" and is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1179 (9th Cir. 2015) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

[13] The Court can consider REI's Articles of Incorporation while ruling on this motion to dismiss, because "[a]s certified public records kept by the Secretar[y] of State in Washington. . ., the Articles fall directly into the category of items that the Ninth Circuit generally considers proper for judicial notice." *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003).

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 10
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

their patronage dividends as a "gift card or gift certification," rather than as a distribution from net corporate earnings.  Just as in *CorePower Yoga*, assuming that REI's patronage dividends were gift cards, they would still fall squarely within the exclusion for reloadable cards that cannot be transferred as a gift.

*Second*, even if patronage dividends were gift cards, they would also satisfy the exclusion for "a loyalty, award, or promotional gift card."  15 U.S.C. § 1693*l*-1(a)(2)(D)(iii).  In Regulation E, the Consumer Financial Protection Bureau defined a "Loyalty, award, or promotional gift card" to mean:

> a card, code, or other device that:
>
> (i) Is issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in connection with a **loyalty, award, or promotional program**;
>
> (ii) Is redeemable upon presentation at one or more merchants for goods or services, or usable at automated teller machines; and
>
> (iii) Sets forth the following disclosures, as applicable:
>
> (A) A statement indicating that the card, code, or other device is **issued for loyalty, award, or promotional purposes**, which must be included on the front of the card, code, or other device;
>
> (B) The expiration date for the underlying funds, which must be included on the front of the card, code, or other device;
>
> (C) The amount of any fees that may be imposed in connection with the card, code, or other device, and the conditions under which they may be imposed, which must be provided on or with the card, code, or other device; and
>
> (D) A toll-free telephone number and, if one is maintained, a Web site, that a consumer may use to obtain fee information, which must be included on the card, code, or other device.

12 C.F.R. § 1005.20(a)(4).  In turn, the Official Staff Interpretations of Regulation E explain that "loyalty, award, or promotional programs" can:

> include, but are not limited to:
>
> i. Consumer retention programs operated or administered by a merchant or other person that provide to consumers cards or coupons redeemable for or towards goods or services or other monetary value as a reward for purchases made or for visits to the participating merchant;

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 11
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1
2
3
4
5

ii. Sales promotions operated or administered by a merchant or product manufacturer that provide coupons or discounts redeemable for or towards goods or services or other monetary value[; and]

iii. Rebate programs operated or administered by a merchant or product manufacturer that provide cards redeemable for or towards goods or services or other monetary value to consumers in connection with the consumer's purchase of a product or service and the consumer's completion of the rebate submission process.

6
7
8
9

Official Staff Interpretations, 12 C.F.R. Part 1005, Supp. I, § 1005.20, Comment 20(a)(4)-1. REI's patronage dividends are no different from these examples, because they are issued from net earnings "in proportion to the business of each [member] with the association," and they are not purchased directly by a consumer. *See* RCW 23.86.160.

10
11
12
13
14
15
16
17
18
19

The Official Staff Interpretations explain that while Regulation E requires "[a] statement indicating that the card, code, or other device is issued for loyalty, award, or promotional purposes," 12 C.F.R. §1005.20(a)(4)(iii)(a) does not require the use of any **particular** language on a card.   Official Staff Interpretations, 12 C.F.R. Part 1005, Supp. I, § 1005.20, Comment 20(a)(4)-2.  Rather, "[t]o indicate that a card, code, or other device is issued for loyalty, award, or promotional purposes as required by § 1005.20(a)(4)(iii), it is sufficient for the card, code, or other device to state on the front, for example, 'Reward' or 'Promotional.'" *Id*.  REI's patronage dividends satisfy this standard, as they are issued with a letter disclosing that they are a "member benefit" provided through REI's patronage dividend program.  Dividend Statement, Todaro Decl. Ex. 2 at 4.

20
21
22
23
24
25
26

***Finally***, even assuming that member patronage dividends met the definition of a gift card, they would be excluded from the EFTA as gift cards that are "not marketed to the general public." 15 U.S.C. § 1693*l*-1(a)(2)(D)(iv).  REI's member patronage dividends are issued **only** to the members of REI, rather than to the public at large.  The court interpreted identical language in *Humphrey v. Stored Value Cards*, 355 F. Supp. 3d 638, 644 (N.D. Ohio 2019), which involved an EFTA claim regarding prepaid cards issued to prison inmates.  The Court specifically rejected the plaintiffs' argument that "they [we]re members of the general public," because the challenged

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 12
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1   cards were available only to detained inmates. *Id.* Similarly, the Court recognized that

2   "Defendant Numi does perform marketing for the program, but it is program marketing (not card

3   marketing) to correctional institutions." *Id.* The same principles apply to member patronage

4   dividends. Regardless of whether REI engages in "program marketing," its member patronage

5   dividends, as a matter of law, are not issued to the public at large, or even to non-members who

6   shop at REI.

7       For all three of these reasons, even if REI's member dividends did satisfy the initial

8   requirements of 15 U.S.C. § 1693*l*-1(a)(2)(C), they would fall within clear exclusions from

9   the EFTA.

10  **C.    Washington's Gift Certificate Statute does not regulate patronage dividends.**

11      Under Washington law, patronage dividends are subject to **mandatory** reversion in

12  RCW 23.86.160, rather than the **ban** on expiration in Washington's gift certificate statute,

13  RCW 19.240 *et seq*. As stated in Washington's gift certificate statute:

14              (1) Except as provided in RCW 19.240.030 through 19.240.070, it
                is unlawful for any person or entity to issue, or to enforce against
15              a bearer, a gift certificate that contains:  (a) An expiration date . . .

16  RCW 19.240.020. Extending this statute to member patronage dividends would require this

17  Court to create a conflict with RCW 23.86.160, which states that "[a]ll unclaimed dividends . . .

18  **shall revert** to the association" on a date determined by the board of directors of the company.

19  By contrast, the Plaintiffs argue member patronage dividends are bound by a statutory

20  requirement that they **never** expire. The Court can—and should—easily avoid this conflict by

21  holding that REI's member patronage dividends are not "gift certificates" subject to

22  RCW 19.240.020.

23          *1.    The Legislature specifically decided that Washington's gift certificate statute does
               not apply to intangible property like member dividends.*
24

25      The Legislature has clearly explained that Washington's gift certificate statute does not

26  apply to "intangible property" like member patronage dividends. Washington's gift certificate

    statute was passed as an amendment to the State's Uniform Unclaimed Property Act, RCW 63.29.

1   Gift Certificates, Wash. Laws of 2004, ch. 168, § 1 (2004), Todaro Decl. Ex. 4.  The introduction

2   to the gift certificate statute explains:

3           It is the intent of the legislature to relieve businesses from the
        obligation of reporting gift certificates as unclaimed property. . . .

4       **The legislature does not intend that chapter 168, Laws of 2004
        be construed to apply to cards or other payment instruments**

5       **issued for payment of** wages or other **intangible property**.  To
        that end, the legislature intends that chapter 168, Laws of 2004

6       should be liberally construed to benefit consumers and that **any
        ambiguities should be resolved by applying the uniform**

7       <u>**unclaimed property act to the intangible property in question**</u>.

8   RCW 19.240.005.  The definition of "intangible property" is provided in Washington's Uniform

9   Unclaimed Property Act, which states:  "'Intangible property' does not include contract claims

10  which are unliquidated but **<u>does include</u>**:  (a) Moneys, checks, drafts, deposits, interest,

11  **<u>dividends</u>**, and income . . ."  RCW 63.29.010(12).  Thus, according to the Legislature's clear

12  intent, the gift certificate statute does not apply to "cards or other payment instruments issued for

13  payment of" **<u>dividends</u>**.  RCW 19.240.005.  As such, the provisions of the gift certificate statute,

14  including RCW 19.240.020, do not apply to the member patronage dividends at issue in the

15  Complaint.

16          2.      *Extending RCW 19.240.020 to member dividends would require this court to
                create a conflict with RCW 23.86.160.*

17

18          As discussed in more detail above, member patronage dividends are subject to a specific

19  statutory scheme mandating that "[a]ll unclaimed dividends . . . **<u>shall revert</u>** to the association at

20  the discretion of the directors **<u>at any time after one year from the end of the fiscal year during</u>**

21  **<u>which such distributions or redemptions have been declared</u>**."  RCW 23.86.160.  There is no

22  question that unclaimed dividends **<u>must</u>** revert back to REI.  RCW 23.86.160 uses the word

23  "may" **<u>six times</u>** for discretionary actions available to directors, before using the word "shall" to

24  declare that dividends must "revert to the association."  In instances like this one, "[w]hen a

25  statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a

26  mandatory duty."  *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016).

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S          DLA Piper LLP (US)
MOTION TO DISMISS - 14                            701 Fifth Avenue, Suite 7000
Case No. 2:19-CV-00662                            Seattle, WA  98104-7044 | Tel: 206.839.4800

In contrast to the **mandatory** reversion period for member dividends, RCW 19.240.020 holds that covered gift certificates purchased in Washington can never expire. Extending RCW 19.240.020 to member dividends would require this Court to create a needless conflict between these entirely compatible statutes.[14] Instead, the Court can easily harmonize these statutes to govern two separate, entirely different regulatory schemes by holding that member dividends subject to RCW 23.86.160 simply are not gift certificates subject to RCW 19.240.020. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Holding that member dividends are not gift certificates and **must** revert to the association is the only harmonious interpretation of these statutes.

There is nothing to suggest that the Legislature intended to cover member dividends when it decided to regulate gift certificates in 2004. The reversion requirement in RCW 23.86.160 was originally added in 1947, when the Washington Legislature specifically required the directors of every cooperative association to choose a date when all unclaimed dividends "shall" revert to the membership association. Cooperative Associations, Wash. Laws of 1947, ch. 37, § 13 (1947), Todaro Decl. Ex. 5. When enacting Washington's gift certificate statute in 2004, the Legislature did not purport to amend—or even mention—the deadline for reversion of unclaimed dividends issued by a membership association. Gift Certificates, Wash. Laws of 2004, ch. 168, §§ 1–20 (2004), Todaro Decl. Ex. 4.

"It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more

---

[14] The Plaintiffs' interpretation of the gift certificate statute would also cause an unnecessary conflict with the Washington Uniform Unclaimed Property Act. RCW 63.29.060 explains that "all intangible property"—defined to include dividends—"that is held, issued, or owing in the ordinary course of the holder's business and has remained unclaimed by the owner for more than three years after it became payable or distributable is presumed abandoned" and must be provided to the State. Similarly, under RCW 63.29.100(1-4), both a dividend *and* the corresponding "ownership interest in a business association" are presumed abandoned if unclaimed without communication for three years.

DEFENDANT RECREATIONAL EQUIPMENT, INC.'S
MOTION TO DISMISS - 15
Case No. 2:19-CV-00662

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800

1  generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).  And, "[i]t

2  is, of course, a cardinal principle of statutory construction that repeals by implication are not

3  favored." *Id.* at 154.  "Where there is no clear intention otherwise, a specific statute will not be

4  controlled or nullified by a general one, regardless of the priority of enactment." *Mancari*, 417

5  U.S. at 550–51.

6        These principles are equally applicable to interpretation of Washington statutes. [15]

7  Washington courts "do not favor repeal by implication, and where potentially conflicting acts

8  can be harmonized, we construe each to maintain the integrity of the other." *Anderson v. State,*

9  *Dep't of Corr.*, 159 Wn.2d 849, 858–59 (2007).  Similarly, "[a] principle of statutory construction

10  is to avoid interpreting statutes to create conflicts between different provisions, so as to achieve

11  a harmonious statutory scheme." *Scheib v. Crosby*, 160 Wn. App. 345, 350 (2011).  For all of

12  these reasons, the Court should hold that member dividends are subject to the reversion deadline

13  in RCW 23.86.160, rather than the conflicting provision in RCW 19.240.020.

14        The court confronted a similarly absurd extension of gift certificate statutes in *CorePower*

15  *Yoga*, where the plaintiff argued that providing consumers with **any** form of ticket or voucher

16  created a gift card subject to regulation under the EFTA.  2013 WL 1314456, at *4.  "Under

17  Plaintiff's interpretation of the statute, putting time limits on admission passes, codes, vouchers,

18  or tickets, including time restrictions on monthly passes to a parking garage, admission passes to

19  theme parks, physical training packages, music lessons, and bus passes good for a certain number

20  of rides, would violate the statute." *Id*.  The court rejected this expansive interpretation of a gift

21  card, holding "[i]t would be absurd to determine that these prepaid, time-limited goods and

22  services are unlawful because they contain expiration dates or temporal restrictions." *Id*.

23

24

---

25  [15] Although no Washington courts have interpreted the relationship between RCW 23.86.160 and
   RCW 19.240.020 "a federal court sitting in diversity, must predict how the Washington Supreme
26  Court would decide the issue." *Scanlon v. Life Ins. Co. of N. Am.*, No. C08-0256-JCC, 2008 WL
   11343466, at *5 n.4 (W.D. Wash. Dec. 12, 2008).

1    Similarly, under the Plaintiffs' expansive interpretation, Washington's gift certificate

2    statute would alter the statutory framework governing not just dividends issued by REI, but also

3    **every** other cooperative association in the State.  Halting the reversion of unclaimed dividends

4    would also cause serious disruption for cooperative associations—and the bodies that tax them.

5    The Plaintiffs' interpretation would convert member dividends into perpetual liabilities that never

6    revert back to the company, reducing the net earnings available for future dividends to active

7    members.  The Plaintiffs' approach to member dividends would create numerous unanticipated

8    consequences for REI and other cooperative associations inside and outside the state.

9          3.    *Even if member dividends fell within the definition of a "gift card," they would be*
              *subject to exclusions for "loyalty programs."*

10

11   Even if REI's member dividends met the definition of a gift card under Washington law,

     they would fall within exclusions from Washington's gift certificate statute.[16]  Like similar

12   exclusions in the EFTA, Washington's gift certificate statute contains exceptions for "awards or

13   loyalty program[s]" and gift cards that are not sold in exchange for money.  As provided by

14   RCW 19.240.030(1):

15

16              It is **lawful** to issue, and to enforce against the bearer, a gift
                certificate containing an expiration date if:  (a) The gift certificate
17              is issued **pursuant to an awards or loyalty program** or in other
                instances **where no money or other thing of value is given in**
18              **exchange for the gift certificate**.

19   REI's member patronage dividends would fall within both these exceptions to Washington's gift

20   certificate statute.  Even if member patronage dividends were gift certificates, they would be

     "issued pursuant to an awards or loyalty program."   Second, patronage dividends are a

21   distribution from net earnings that cannot be purchased in exchange for cash.  Just as with

22   analogous exclusions to the EFTA, the Court should find that REI's patronage dividends fall

23

24   ───────────
     [16] Under RCW 19.240.010(5)(a), "'[g]ift certificate' means an instrument evidencing a promise
     by the seller or issuer of the record that consumer goods or services will be provided to the bearer

25   of the record to the value or credit shown in the record and includes gift cards."  Similarly, "'[g]ift
     card' means a record as described in subsection (5) of this section in the form of a card, or a

26   stored value card or other physical medium, containing stored value primarily intended to be
     exchanged for consumer goods and services."  RCW 19.240.010(4)(a).

1   within both exclusions to the Washington statute.  Because there is no authority interpreting the

2   exclusions in RCW 19.240.030, the Court should interpret them in harmony with the EFTA,

3   taking "guidance from the rule that if the state statute relates to the same subject matter as a

4   federal act, the interpretations of the federal act may be used to assist in the interpretation of the

5   state statute." *Albertson's, Inc. v. Washington State Human Rights Comm'n*, 14 Wn. App. 697,

6   699 (1976).   REI's member patronage dividends cannot sustain a claim for violation of

7   RCW 19.240.020.

8                                    **IV.    CONCLUSION**

9          For all these reasons, Defendant Recreational Equipment, Inc. respectfully requests that

10  the Court grants its motion to dismiss the Plaintiffs' complaint, with prejudice against refiling.

11         Respectfully submitted this 30th day of May, 2019.

12                                              DLA PIPER LLP (US)

13

14                                              <u>s/ Anthony Todaro</u>
                                                Anthony Todaro, WSBA No. 30391
15                                              David Freeburg, WSBA No. 48935
                                                Virginia Weeks, WSBA No. 55007
16                                              701 Fifth Avenue, Suite 6900
                                                Seattle, WA  98104-7029
17                                              Tel:    206.839.4800
                                                Fax:    206.839.4801
18                                              E-mail:  anthony.todaro@us.dlapiper.com
19                                              E-mail:  david.freeburg@us.dlapiper.com
                                                E-mail:  virginia.weeks@us.dlapiper.com
20

21                                              *Attorneys for Defendant Recreational*
                                                *Equipment, Inc.*
22

23

24

25

26

1

**<u>CERTIFICATE OF SERVICE</u>**

2

     I hereby certify that on May 30, 2019, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to all parties

4

or their counsel of record.

5

6

     Dated this 30th day of May, 2019.

7

                    *s/ Alicia Morales*

8

                    Alicia Morales, Legal Practice Specialist

9

10

11

WEST\286335336.6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 | Tel: 206.839.4800